ADAMS ENTERPRISE et al.,
Appellants,

v.

Victoria V. BARRY, Appellee.

No. 6087.

Court of Civil Appeals of Texas,
Waco.

Feb. 14, 1980.

Rehearing Denied March 6, 1980.

Garry Lewellen and Martin Peterson, McMillan & Lewellen, P. C., Stephenville, for appellants.

James R. Weddington, Friedman, Weddington, Hansen & Gordon, Austin, for appellee.

HALL, Justice.

This suit was filed on November 12, 1974, by plaintiff-appellee Victoria V. Barry against defendants-appellants David O. Sark, J. O. Adams, and Adams Enterprise, a partnership. Plaintiff sought *inter alia* (1) to be declared a partner in Adams Enterprise or (2) to recover alleged investments and contributions in and to the partnership in the amount of $18,000.00.

It is undisputed in the record that in 1969, by written agreement, George Adams (now deceased) and defendants David O. Sark and J. O. Adams associated themselves as the only partners in the defendant partnership known as Adams Enterprise to develop and operate for profit certain land and improvements thereon located in Coryell County, Texas for "commercial recreation, agriculture, industry and entertainment"; that George Adams was the managing partner with "the power to conduct all the business affairs necessary and incidental to the operation of the partnership" under the terms of the written partnership agreement; and that George Adams died on September 3, 1973. Among other pleadings for relief, plaintiff alleged that in the

latter part of 1971 she invested $12,500.00 cash in Adams Enterprise under an agreement with the partners that she would then be a partner; that in 1971, 1972, and 1973 she contributed an additional $2,263.00 in cash plus personal services worth $3,237.00 to the partnership; that defendants repudiated the agreement to form the partnership with her, but have not paid to her the $18,000.00 invested and contributed by her, and that said sum should be treated as a loan or debt to the partnership; and that plaintiff did not know until after the death of George Adams on September 3, 1973, that defendants were not intending to return her $18,000.00 investment and contribution. Defendants answered with a general denial, a sworn special denial that plaintiff was a partner in Adams Enterprise, and an affirmative plea that plaintiff's action was barred by limitation because it accrued more than two years before the filing of this suit.

The case was tried to the court without a jury. Judgment was rendered (1) awarding plaintiff a recovery of $7,885.87 against the defendants and (2) declaring that plaintiff "is not now nor has she been a partner in Adams Enterprise."

Defendants perfected this appeal.

The trial court filed findings of fact and conclusions of law in support of the judgment. These included conclusions (1) that plaintiff's cause of action did not accrue until after September, 1973, and therefore was not barred by limitation; and (2) that defendants were indebted to plaintiff in the amount of $7,885.87. Defendants assert that the findings supporting both conclusions are not supported by any evidence; and, alternatively, they contend that the findings supporting the second conclusion are against the great weight and preponderance of the evidence. In turn, plaintiff asserts in a cross point that the evidence conclusively establishes that she is entitled to recover $12,500.00 from defendants. We overrule these contentions, and others, and affirm the judgment.

The case was tried in December, 1978. The only witnesses were plaintiff Barry and defendants Sark and J. O. Adams. Much of the testimony of these parties was disputed and equivocal and other portions could not be readily contradicted if untrue. Testimony of this nature, coming from witnesses who were interested in the matters in issue, raised only questions of fact and were not conclusive. *Gevinson v. Manhattan Construction Co. of Oklahoma*, (Tex.1969) 449 S.W.2d 458, 467. As trier of the facts, it was the trial judge's prerogative and duty to weigh all of the evidence, pick out what he believed to be its most credible parts, and make his determinations accordingly. *Washburn v. Honea*, 553 S.W.2d 956, 959 (Tex.Civ.App.—Waco 1977, no writ).

There is evidence of the following facts. Plaintiff is a nurse. In 1971, she was employed by the University of Illinois, George Adams was labor relations officer for the University of Illinois, and Sark was the representative for the University employees' local union. Plaintiff and George Adams became acquainted while working together on a committee at the University, and through him she learned about Adams Enterprise and its holdings in Coryell County, Texas, and its business purposes there. Plaintiff faced retirement in 1971 from her employment with the University; and she was requested by George Adams to move to Texas and care for his aged mother who lived on the partnership property, with the understanding that upon doing so she would be given the opportunity "to buy into the place and become a partner." In the Spring of 1971, plaintiff and George Adams and Sark met in Sark's home in Chicago to discuss the possibility of plaintiff becoming a partner in Adams Enterprise. George Adams proposed at the meeting that plaintiff be permitted to "buy into" the partnership for $10,000.00; and he also asked Sark if Sark could also contribute an additional $10,000.00 so the partnership could begin to remodel a house on the premises into a lodge house. Sark stated that he did not have the $10,000.00 to invest because he had just invested $90,000.00 elsewhere. However, Sark voiced no objection to George

Adams's proposal to permit plaintiff to invest into Adams Enterprise and become a partner. But George Adams's wife, although not a partner, did object to the proposal. In April 1971, plaintiff came to Texas, met George Adams's mother and sister, met the caretaker of the partnership properties, and viewed the premises. She then returned to her job in Chicago. Thereafter, in November, 1971, plaintiff returned to Texas, moved into a house owned by Adams Enterprise on the partnership premises in which George Adams's mother resided, and began to care for the mother. By this time, George Adams had also moved onto the partnership property in Texas. Plaintiff testified that by December 1, 1971, she had given George Adams $10,000.00 or $12,000.00 "that was my share in the Enterprise"; and that "him being the manager, he spent the monies for the—I suppose the needed things." She said she knew that some of the money was used to pay off a partnership loan of $1,000.00 plus $39.00 interest, and to buy a pickup truck for the partnership. Documentary evidence shows that on December 3, 1971, George Adams purchased a 1972 pickup truck for $5,920.43; and that on January 21, 1972, plaintiff executed her personal check in the amount of $1,039.78 payable to Adams Enterprise for payment of a loan owed by it.

On December 17, 1971, at an attorney's office in the City of Gatesville, in Coryell County, Texas, both plaintiff and George Adams executed an instrument denominated "Addendum To Articles of Partnership." The import of this instrument was that the partners to the original partnership agreement agreed that the original agreement would be amended to include plaintiff as a partner in Adams Enterprise. It included the following recitations: "For and in consideration of the sum of TWELVE THOUSAND FIVE HUNDRED AND NO/100 ($12,500.00) DOLLARS paid to ADAMS ENTERPRISE at various times during the calendar year 1971, the receipt of which is hereby acknowledged, George H. Adams, David O. Sark, and J. O. Adams hereby bargain, sell, grant, and convey unto Victoria V. Barry an undivided interest in AD-

AMS ENTERPRISE . . . .. Each of the partners' signature is subscribed hereto ratifying in all things the Articles of Partnership referred to above, the only change being the addition of a new partner." Inferentially, the record shows that this instrument was prepared by the attorney at the request of George Adams. Places were provided on the instrument for the signatures and acknowledgments of Sark and J. O. Adams. George Adams mailed the instrument to Sark for execution, but Sark refused to sign it and wrote "Positively Not, No Agreement of any kind" in the place provided for his signature, and then returned it to George Adams. The instrument was never executed by Sark and J. O. Adams. Plaintiff testified that after signing the Addendum she did not see it again and that until after the death of George Adams she did not finally learn that Sark and J. O. Adams had not executed it.

George Adams's mother died in January, 1972. Plaintiff continued living in "the mother's house" until the Spring of 1973, at which time she moved into another house on the partnership premises in which George Adams was living. They continued living in the house (plaintiff said that she used the back bedroom as her room) until George Adams died. Plaintiff was still living on the premises at the time of trial.

Plaintiff testified that after the death of George Adams's mother in January, 1972, until George Adams died in September, 1973, she performed work like the following examples for Adams Enterprise:

"I rehabilitated and painted the sign out there. And when cattle would get out, climb the fences, I would go with Mr. Adams to help him put up the fences. For instance, there was a calf that broke its hoof and had pneumonia, I splinted the hoof so that it would heal and I gave the calf injections for a whole week for pneumonia so that it got well. And when the cattle had screw worms, I helped him spray for the screw worms. I gave the cattle injections, and cut grass, and went out there—when Mr. Adams had the whole place bulldozed—there were piles

and piles of work, and I went out there night after night to burn down some of these piles, and anything. And when they had to go somewhere on business, I was taken along because he wanted me to learn about everything so that I would be aware of what was going on. So whatever pertained to the business, I was included in it, because I was considered a business associate and a member of the partnership."

Plaintiff also testified that after she moved into the house with George Adams, and until his death, she "cooked his meals, cared for him, washed his clothes . . . took care of him as a patient, too, when he was ill, gave him injections, and gave him his medication."

Plaintiff was adamant in her testimony that no one ever told her that she was not a partner, that she did not know she was not a partner, and that she was not aware of the fact that she was not considered a partner by the others, until after George Adams died. She said that her first "clue" that she was not considered a partner came after George Adams's death when J. O. Adams told her "that Mr. Sark was going to put me off the property," and that thereafter "by way of the grapevine I was told that I was going to lose my pants."

J. O. Adams testified that his first knowledge that George Adams was proposing that plaintiff should be a partner stemmed from the following incident which he said occurred "about the beginning of 1972":

"I was doing some welding out there on the ranch. I hadn't had any lunch, so I got in my car and started to go to Gatesville. I met [George Adams] coming back to the ranch, right at the corner of our property. So, I stopped my car, and we were parked side by side, driver's side to driver's side. Victoria Barry was in the front of the truck with him. He said, 'where are you going,' and I said, 'I am going into town to get me a sandwich.' He said, 'Well while you are in there go by and sign them papers in [the lawyer's] office.' And I said, 'What papers . . I want to know what they are before I sign them.' And he said, 'Well, it is papers to sign Victoria in as a partner.' And I said, 'Now listen, we have an agreement with Mr. Sark we are not bringing any other partners in until we all meet.' And he said, 'Go ahead and sign them, it is okay with him. I have already called him and told him.' And I said, 'George, I want to hear Mr. Sark's version.' So I just put my car in gear and drove off, and I didn't go sign the papers. That is my first knowledge that was ever said about it. I don't know whether or not Victoria heard George say that Mr. Sark had already agreed that she could become a partner. I don't know whether she could have heard it or not, because I had my engine running on my car and he had the engine running on the truck. We were more or less yelling back and forth to each other."

In support of their limitation plea against plaintiff's action for the return of her investments and contributions, defendants assert that the record establishes that at least two years prior to the time of the filing of this suit on November 12, 1974, plaintiff either knew or reasonably should have known that she had not been accepted as a partner in Adams Enterprise. We overrule those contentions. We have not set forth all of the evidence on those questions, but we find no evidence in the record that plaintiff knew prior to George Adams's death in September, 1973, that the Addendum had not been executed by Sark and J. O. Adams or that she otherwise knew that she had been rejected by them as a partner. Plaintiff's testimony directly contradicted those facts, and the trial court was entitled to believe her. Among other arguments by them, defendants assert that the conversation between J. O. Adams and George Adams in the early part of 1972, when they were sitting in their vehicles with plaintiff present in George's vehicle, should have reasonably placed plaintiff on notice that her acceptance into the partnership was in doubt. We disagree. First, plaintiff was never asked if she heard the conversation, and there is no evidence that she did. If she had heard it, she could have reasonably

believed from the statements made by George and J. O. that Sark had already agreed to her entry into the partnership, and that as soon as J. O. verified Sark's approval he would also agree. This is especially true in the light of the fact that J. O. did not thereafter tell plaintiff that she had not been accepted as a partner.

 Plaintiff testified to advances of approximately $16,000.00 in cash to George Adams, as general manager of Adams Enterprise, which she said represented her investment in the partnership; and she said she assumed Adams used all of the money for the partnership business. She was able to document (mostly by copies of cashed checks made by her payable to Adams Enterprise) the sum of $7,885.87 which was allowed as her recovery by the court, and verify from memory that advances in that amount were used for the partnership business by Adams. We hold that the evidence is both legally and factually sufficient to support the award to plaintiff for that sum, and defendants' contrary contentions are overruled.

Defendants' remaining points and contentions are also overruled.

In her cross point, plaintiff bases her claim for $12,500.00 on the recitation in the Addendum to the Articles of Partnership that she had paid that sum "to Adams Enterprise at various times during the calendar year 1971," which was acknowledged by George Adams by his signing of the Addendum. Plaintiff argues that this acknowledgement by George Adams raised a presumption of payment of the recited sum to the partnership which was never rebutted by defendants. Under the record, the trial court was justified in believing that the relationship between plaintiff and defendant was much closer than mere friends or business acquaintances. In fact, plaintiff was charged by J. O. Adams and others with breaking up the marriage between George Adams and his wife. She denied the charge. The evidence shows that from time to time plaintiff made substantial cash advances to George Adams for his personal use. Plaintiff's documented proof of ad-

vances to the partnership in 1971 totalled only $6,623.50. She laid the absence of other documentation of the $12,500.00 to its loss during the shuffling of her papers among lawyers who had represented her at various times in this case, but the trial court was not required to believe that explanation. It is our view that under all of the evidence the court was justified in determining that the sum of $12,500.00 had not in fact been contributed to the partnership by plaintiff. Her cross point is overruled.

The judgment is affirmed.